## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BMO BANK N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. __2:24-cv-686__ |
| v. | ) | |
| | ) | |
| STARWAY LOGISTIC, LLC, a Pennsylvania | ) | |
| corporation, and TENGIZ | ) | |
| OKROPILASHVILI, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>VERIFIED COMPLAINT</u>

Plaintiff BMO Bank N.A., by and through its undersigned counsel, complains of defendants Starway Logistic, LLC and Tengiz Okropilashvili (collectively, the "<u>Defendants</u>"), as follows:

## I.  <u>THE PARTIES</u>

1.      Plaintiff BMO Bank N.A. (the "<u>Bank</u>") is a national banking association with a principal place of business located at 320 S. Canal Street, Chicago, Illinois 60606.

2.      Defendant Starway Logistic, LLC ("<u>Borrower</u>") is Pennsylvania limited liability company, with a principal place of business located at 1 E M-Y Lane, Morrisville, Pennsylvania 19067 and a registered office address at 118 Clearview Avenue, Huntingdon Valley, Pennsylvania 19006.

3.      Defendant Tengiz Okropilashvili ("<u>Guarantor</u>" and, together with Borrower, the "<u>Defendants</u>") is an individual residing, upon information and belief, at 118 Clearview Avenue, Huntingdon Valley, Pennsylvania 19006.

## II.  JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the Bank and Defendants are of diverse citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as the Defendants reside in this District. Specifically, Defendants are present and doing business in this District and therefore subject to the Court's personal jurisdiction (*see* 28 U.S.C. § 1391(c)(2)) and Guarantor is a natural person domiciled in this District (*see* 28 U.S.C. § 1391(c)(1)).

## III.    FACTUAL BACKGROUND

### A.    The Loan Agreements

#### i.    Loan 84001

6.      On April 19, 2022, Borrower and Bank, as lender, entered into that certain Loan and Security Agreement ending in 84001 (the "Loan 84001 Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of (2) two 2023 Kenworth T680s identified by serial numbers 1XKYD49X3PJ238254 and 1XKYD49X5PJ238255 (the "Loan 84001 Collateral"), in exchange for a total payment of $393,007.68, payable in 72 monthly installments of $5,458.44 each, commencing on June 3, 2022.  A copy of the Loan 84001 Agreement is attached hereto as **Exhibit A**.

7.      As consideration for entering into the Loan 84001 Agreement, Borrower granted Bank a security interest in and to the Loan 84001 Collateral as more fully described in the Loan 84001 Agreement. *See* Loan 84001 Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit B**, Bank perfected its security interest in and to the Loan 84001 Collateral by recording its lien with the Commonwealth of Pennsylvania.

8.      As further consideration for entering into the Loan 84001 Agreement, on or about April 19, 2022, Guarantor executed a certain Continuing Guaranty ending in 84001 in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Loan 84001 Agreement (the "Loan 84001 Guaranty"). A true and correct copy of the Loan 84001 Guaranty is attached hereto as **Exhibit C** and incorporated herein.

      ii.      Loan 49001

9.      On November 14, 2022, Borrower and Bank, as lender, entered into that certain Loan and Security Agreement ending in 49001 (the "Loan 49001 Agreement"), pursuant to which Bank agreed to finance Borrower's purchase of (1) one 2023 Kenworth T680-Series: T680 125" BBC Conv Cab SBA Tractor 6X4 identified by serial number 1XKYD49X4PJ259355 (the "Loan 49001 Collateral"), in exchange for a total payment of $219,630.60, payable in 60 monthly installments of $3,660.51 each, commencing on January 1, 2023. A copy of the Loan 49001 Agreement is attached hereto as **Exhibit D**.

10.     As consideration for entering into Loan 49001 Agreement, Borrower granted Bank a security interest in and to the Loan 49001 Collateral as more fully described in the Loan 49001 Agreement. *See* Loan 49001 Agreement § 2.1. As evidenced by the Notice of Recorded Lien attached hereto as **Exhibit E**, Bank perfected its security interest in and to the Loan 49001 Collateral by recording its lien with the Commonwealth of Pennsylvania.

11.     As further consideration for entering into the Loan 49001 Agreement, on or about November 14, 2022, Guarantor executed a certain Continuing Guaranty ending in 49001 in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Loan 49001 Agreement (the "Loan 49001 Guaranty").

A true and correct copy of the Loan 49001 Guaranty is attached hereto as **Exhibit F** and incorporated herein.

       iii.   <u>Loan 87001</u>

**B.**    **Default Provisions**

12.    Hereinafter, the Loan 84001 Agreement and Loan 49001 Agreement are collectively referred to as the "<u>Loan Agreements</u>." The Loan 84001 Collateral and Loan 49001 are referred to collectively as the "<u>Collateral</u>." The Loan 84001 Guaranty and Loan 49001 Guaranty are collectively referred to as the "<u>Guaranties</u>."

13.    Pursuant to the Loan Agreements, an Event of Default shall occur if, *inter alia*, Defendants fail to pay when due any amount owed to Bank under the Loan Agreements. *See* Loan Agreements § 5.1.

14.    Additionally, an Event of Default shall occur if "Debtor or Guarantor fails to pay any Liabilities when due to Bank or any Affiliate of Bank or is otherwise in default under any other document, agreement or instrument…." *Id*.

15.    Pursuant to the Loan Agreements, upon the occurrence of an Event of Default, Bank may, at its option, with or without notice to Defendants, *inter alia*, (i) declare the Loan Agreements to be in default, (ii) declare the indebtedness under the Loan Agreements to be immediately due and payable, and (iii) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code. *See* Loan Agreements § 5.2. All of Bank's rights under the Loan Agreements are cumulative and not alternative. *See* Loan Agreements §7.3(b).

16.    Pursuant to the Loan Agreements, Defendants are obligated to pay Bank all expenses of retaking, holding, preparing for sale, selling and the like of the Collateral, including without limitation (a) the reasonable fees of any attorneys retained by Bank and (b) all other legal expenses incurred by Bank. *See* Loan Agreements § 5.2.

17.     Pursuant to the Guaranties, Guarantor, jointly and severally and in solido, unconditionally guaranteed to Bank all obligations of Borrower.  *See* Guaranties.

18.     Defendants are liable to Bank for any deficiency remaining after disposition of the Collateral after default.  *See id.*

19.     Upon acceleration of Defendants' obligations under the Loan Agreements, interest on all sums then owing shall accrue at the rate of 1½% per month.  *See* Loan Agreements § 5.3.

20.     Pursuant to the terms of the Loan Agreements, Borrower waived its right to a jury trial of any claim or cause of action relating thereto.  *See* Loan Agreements § 7.5.

21.     Pursuant to the terms of the Guaranties, Guarantor waived his right to a jury trial of any claim or cause of action relating thereto.  *See* Guaranties.

**C.     The Payment Defaults**

22.     Borrower is in default under the terms and conditions of the Loan Agreements, having failed, *inter alia*, to make payments when due thereunder.

23.     Guarantor is in default under the terms and conditions of the Guaranties, having failed to make payments when due thereunder.

24.     Bank has performed any and all obligations to be performed by it under the terms of the Loan Agreements and the Guaranties.

25.     On November 28, 2023, Bank notified Defendants of the default status of the Loan Agreements and Guaranties (the "Default Notice") and demanded payment in full on the Loan Agreements. A true and correct copy of the Default Notice is attached hereto as **Exhibit G** and incorporated herein.

26.     At the time of filing of this Complaint, Defendants have not cured the default under the Loan Agreements and the Guaranties, as set forth in the Default Notice.

27.     Due to these defaults and pursuant to the express terms of the Loan Agreements and Guaranties, Bank is entitled to contractual money damages as set forth therein.

28.     As a result of the breaches by Defendants, Bank has been damaged in an aggregate amount equal to not less than $411,034.47 as of November 28, 2023 as follows:

   a.   the balance due under the Loan 84001 Agreement was not less than $263,510.86 as of November 28, 2023, with interest at the Default Rate of 18% *per annum* continuing to accrue in the amount of $127.38 per day;

   b.   the balance due under the Loan 49001 Agreement was not less than $147,523.61 as of November 28, 2023, with interest at the Default Rate of 18% *per annum* continuing to accrue in the amount of $73.61 per day;

**D.     Bank's Damages**

29.     As a result of the breaches by Defendants under the Loan Agreements and Guaranties, Bank has been damaged in an aggregate amount equal to not less than $411,034.47, not including interest, attorneys' fees, and costs of recovery as of November 28, 2023.

30.     The Loan Agreements permits Bank to collect, as additional damages, its attorneys' fees and costs of collection incurred in relation to the Loan Agreements and the Collateral.  *See* Loan Agreements, § 5.2.

<u>**COUNT I – BREACH OF CONTRACT**</u>
**(Borrower)**

31.     Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

32.     Bank has performed all terms and conditions of the Loan Agreements to be performed by Bank.

33.     In contrast, Borrower has not performed under the Loan Agreements and has failed to make payments to Bank under the Loan Agreements when due.

34.     Under the Loan Agreements, Bank is entitled to contractual money damages from Borrower as provided therein.

35.     The amount due under the Loan Agreements as of November 28, 2023, was not less than $411,034.47, which amount is immediately due and owing from Borrower, together with interest on and after November 28, 2023, at the default rate specified in the Loan Agreements.

36.     The Loan Agreements provides that Bank shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Loan Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, penalties, and interest, together with such other and further relief as shall be just and equitable.

## COUNT II – BREACH OF GUARANTY
### (Guarantor)

37.     Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

38.     Bank has performed all terms and conditions of the Guaranties to be performed by Bank.

39.     Under the Guaranties, Guarantor is liable for all amounts due to Bank under the Loan Agreements.

40.     Guarantor is in default under the terms and conditions of the Guaranties, having failed to make payments thereunder.

41.     As a direct and proximate result of Guarantor's breach of the Guaranties, Bank has incurred and continues to incur substantial damages.

42.     The Loan Agreements and Guaranties provide that Bank shall recover its attorneys' fees, costs of collection, and interest on all amounts due and owing.

43.     Bank has been required to retain the services of counsel to prosecute this claim and is therefore entitled to an award of attorneys' fees and costs.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Guaranties, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## <u>COUNT III – INJUNCTIVE RELIEF</u>
### (Defendants)

44.      Bank hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

45.     Defendants continue to possess and utilize, or are capable of utilizing, all or some of the following Collateral for commercial purposes.

46.     On any given day, the Collateral is located, or is capable of being located, in diverse places throughout Pennsylvania and surrounding states.

47.     The Collateral depreciates and deteriorates as a result of its continued use by Defendants, with no commensurate value being conferred to Bank in the form of payments due and owing from Defendants.

48.     Defendants have or should have in place capabilities to identify, locate, and surrender the Collateral, which capabilities may now be breaking down.

49.     Bank will suffer irreparable injury for which no adequate remedy at law exists unless Defendants and other persons and firms having knowledge of this injunction are

(a) enjoined from continuing to use the Collateral; (b) ordered to advise Bank of the location of the Collateral; and (c) ordered to surrender the Collateral to Bank.

WHEREFORE, Bank prays that:

a.      Defendants and other persons and firms having knowledge of the injunction, be temporarily, preliminarily, and permanently enjoined from using the Collateral as of the date of entry of the injunction order;

b.      Defendants be ordered to disclose to Bank the precise location of the Collateral in order for Bank to reclaim it;

c.      Defendants be ordered to recover the Collateral in the hands of third parties for delivery to Bank;

d.      Defendants be temporarily, preliminarily, and permanently enjoined from restricting access of Bank to the Collateral; and

e.       Bank be granted such other and further relief as shall be just and equitable.

## COUNT IV – SPECIFIC PERFORMANCE
### (Borrower)

50.      Bank incorporates and realleges the preceding paragraphs as if fully set forth herein.

51.      In the event of default by Borrower under the Loan Agreements, Borrower is obligated to return the Collateral at its expense and to any location that Bank directs.

52.      In the event of default by Borrower under the Loan Agreements, Bank is entitled to take possession of the Collateral including directing Borrower to remove it to a place deemed convenient by Bank.

53.      Defendants have refused to return possession of the Collateral.

54.      Bank has performed its obligations under the Loan Agreements, and is ready, willing, and able to perform under the Loan Agreements.

55.     Despite demand by Bank, Borrower failed to cure its defaults under the Loan Agreements and has failed to return the Collateral.

WHEREFORE, Bank prays that Judgment be entered in Bank's favor and against Borrower directing Borrower to specifically perform its obligations under the Loan Agreements, and to return and allow the removal of the Collateral, and that Bank be granted such other and further relief as shall be just and equitable.

## COUNT V – REPLEVIN
**(Borrower)**

56.     Bank hereby incorporates by reference the factual allegations contained in the preceding paragraphs.

57.     This claim is brought pursuant to Pa. R. Civ. P. 1075.1 and Fed. R. Civ. P. 64.

58.     Pursuant to the Loan Agreements, upon Borrower's default, Bank is lawfully entitled to possession of the Collateral.

59.     The Collateral is wrongfully detained by Borrower.

60.     Based upon the best knowledge, information, and belief of Bank, the value of the Collateral, in the absence of inspection, and assuming good condition and maintenance, and for purposes of setting bond only, is estimated to be approximately $152,949.00.

61.     The Collateral has not been seized under any process, execution, or attachment against the property of Bank.

62.     Based upon the best knowledge, information, and belief of Bank, the Collateral may be located at 1 E M-Y Lane, Morrisville, Pennsylvania 19067, but may not be located at that location at any particular time.

63.     Given Borrower's possession of the Collateral, it is within the power of Borrower to conceal, waste, encumber, convert, convey, or remove the Collateral from the jurisdiction of the Court, or Bank's post-judgment remedy would be otherwise inadequate.

64.     Bank claims the value of the Collateral not delivered to the officer by virtue of the enforcement of an order of replevin.

WHEREFORE, Bank requests that:

a.     An order of replevin be entered in favor of Bank granting Bank possession of the Collateral;

b.     Bank be awarded a judgment against Borrower for the value of the Collateral if not delivered;

c.     Bank be awarded a judgment against Borrower for damages for detention;

d.     Bank be awarded its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

e.     Bank be granted such other and further relief as shall be just and equitable.


Dated: February 16, 2024                         Respectfully submitted,


                                        */s/ Victoria A. Russell*
                                        Victoria A. Russell (SBN 327538)
                                        Email:     vrussell@reedsmith.com
                                        REED SMITH LLP
                                        Three Logan Square
                                        Suite 3100
                                        Philadelphia, PA  19103-7301
                                        Telephone: +1 215 851 8100
                                        Facsimile: +1 215 851 1420


                                        *Counsel for Plaintiff BMO Bank N.A.*

### **VERIFICATION**

STATE OF IOWA       )

                           )

COUNTY OF LINN     )

       Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true.  I further declare that: My name is Josh Watson, I am a litigation specialist of plaintiff, BMO Bank N.A. (the "Bank"), I have authority to make this Verification on the Bank's behalf, and this Verification is made based on my personal knowledge and as facts appear in the business records of the Bank.

                         _____

                         Josh Watson
                         Litigation Specialist
                         BMO Bank N.A.

Sworn and subscribed before me this _13_ day of _February_ 2024, by Josh Watson, as Litigation Specialist of BMO Bank N.A. and on its behalf, who (✓) is personally known to me or (__) has produced _____ as identification.

                         _____

                         Notary Public, State of Iowa

| MICKI S KOEPKE |
| :---: |
| Notarial Seal - Iowa |
| Commission No. 851050 |
| My Commission Expires Sept. 27, 2026 |

                         Printed Name: _Micki Koepke_

                         Commission No.: _851050_

                         My commission expires: _9-27-2026_